Case number 21-11774, Public Risk Management of Florida v. Munich Reinsurance America, Inc. You may proceed. Thank you, Your Honor. Good morning. Good to be back. Donovan Roper on behalf of PRM, Public Risk Management of Florida. The district court in this case committed a reversible error in several different ways, but the most material one was the deviation from a proper standard of review that this court established in 1999 in the American Bankers case. By not beginning its starting point in the language in the actual reinsurance agreement in order to ascertain its terms and determine whether or not it's been breached. And to look at whether or not there was any evidence of bad faith by PRM in its underlying coverage determinations. On page 1334 of the American Bankers decision, this court specifically said that has to be the starting point for any breach of reinsurance contract analysis. The district court did not do that. The district court did not even interpret the plain and simple interpreted terms of the reinsurance agreement. Instead, Judge Scriven devolved into a de novo coverage review of both the legal defense determinations as well as the coverage determinations in granting summary judgment in Munich reinsurance favor. That is simply. Let me get you to help me because as far as I can see, the district court was precisely correct. And the reason is that in this case, the reinsurance policy says, in effect, I will reinsure you, PRM, if you pay your insured, which you did. But then it also says proof of payment by PRM and coverage here under. And in the ultimate net loss definition, what the reinsurance policy agrees to pay is what you pay your insured for which you are liable under this coverage document reinsured here under. Which means the 4108 to 4109 policy, which is the coverage document that was insured by the reinsurance company. So although you did pay, true, you didn't pay it for a liability under the 4108 to 4109 policy because of that language about the series of wrongful acts is only one. And the single occurrence is deemed to occur at the first of such, which was long before 4108. So it seems to me that the district judge was clearly right that the second amended complaint in the underlying case laid out those series of wrongful acts. So it was clear that there was no duty to defend and the trial came out with the same facts and it was clear there was no duty to indemnify. So where am I wrong? Well, I would respectfully say that if you look at the first page of the reinsurance agreement, it is an indemnification contract. It specifically says that Munich Re agrees to indemnify for all losses covered under the PRM coverage document. So this is strictly an indemnification contract. And the crucial word you just mentioned is under this coverage document. Yes, sir. In the second amended complaint, keeping in mind that PRM denied coverage on the first initial complaint and the first amended complaint because there were strictly inverse condemnation counts. When we received the second amended complaint, there were lots of dates referenced in there. Our coverage period, as you correctly pointed out, is 4108 to 4109. There are at least 12 different allegations of bad acts that occur between paragraphs 40 and 59 of the second amended complaint. And as you pointed out before, there are incidents that predate that. When one looks at the date that the Pinellas County Circuit Court found and determined that there was quite title interest, absolute fee simple title interest in that property, the beach parcel in the Chmielewski's favor. That was the date that the possessory interest that any Fourth Amendment Section 1983 claim would arise because coverage up until that point. I saw that argument, but it seemed to me almost frivolous because when a court declares the title in a quiet title case, I had lots of those. It's not saying you just now get this title. It's saying you've had it all along. You are the owner. That is relevant because it goes right to the question of whether PRM made a good faith determination as to when the first bad act occurred. The whole point of American bankers is to prevent reinsurers from revisiting issues that they previously were determined before. I understand that's your follow the fortunes argument. Yes, sir. It seems to me clear in this case that number one, there is no express follow the fortunes for the reasons I just gave you. It's express the opposite. In other words, it has to be both paid and it has to be covered under the coverage document, which is reinsured hereby. In other words, it has to be covered under the 4108 to 4109 policy. It seems to me, number one, there's not an express policy and there could not be an implied policy of follow the fortunes because it would be precisely contradictory to the language of the reinsurance agreement. What Munich Re is asking you to do, though, and where the reversible error is on this initial point, is that if you start revisiting good faith determinations by underlying insurers in a reinsurance context, you open up the Pandora's box that this court recognized in re-litigating not only reinsurance issues, but initial coverage determination issues in the underlying case. To permit a reinsurer to revisit coverage issues would place us as PRM in an untenable position of advancing defenses and coverage contests that would be used against us later. That may be a good policy argument, but we have to look at the contract. We have to interpret the contract here. Correct, and that's where Judge Scriven went off into the weeds. She did not interpret the precise terms of the actual reinsurance agreement itself. Tell me, what term, excuse me, if he doesn't answer your question, I'll come back to you. But what term of the reinsurance policy says something precisely opposite the two sections that I just read you, including most particularly the ultimate net loss? The court, the district court, strictly said, went right to the follow the fortunes clause and said that is not a follow the fortunes clause. And then interpreted it according to a de novo review of the underlying coverage document. The focus instead should have been strictly on the terms of the reinsurance agreement. What does PRM have to do? PRM has three obligations. We fulfilled all of those obligations. Munich Re in this indemnification contract only had one duty, and that is to pay upon proof by PRM that it covered and that it paid the loss. Okay, and of course they failed on the covered. I'm sorry, Your Honor. And there was no coverage. There was coverage in the underlying case by PRM. Sure, in a previous policy. Correct. The key here is that a previous policy not reinsured by Munich. The Munich Re policy is for the 4108, 4109 period, as was the PRM coverage document. The wrongful acts that were alleged in the underlying case were within that coverage period. Of course, but under your contract, 4108 to 4109, it wasn't covered because you deem this wrongful series to be a single act which is deemed to occur when the first of those acts apply. The key here, though, Your Honor, is if the court follows American bankers or just simply follows a strict interpretation of the contract, you don't engage in a no vote review. I apologize, but you haven't told me what provision of the reinsurance policy contradicts the two provisions I pointed out to you. For ultimate loss? For ultimate loss? Yes, yes. In other words, what you, PRM, has to show the reinsurance to get paid is that you paid it and you did that, but you haven't showed that it was covered under the 4108 policy. Well, I think we have, Your Honor. We have because of the fact that there was certainly a duty to defend, right? No, there was not because the second amended complaint made clear this wrongful series. Line 3 Village and PRM v. 1 Beacon makes it clear that if there are allegations within the four corners of complaint that call into question coverage, and there certainly were 12 different allegations within paragraphs 40 through 59 of coverage within the coverage period between 4108 and 4109, and there were many of them, if there is arguably coverage, as you know from Trizic Properties and from Trailer Bridge, PRM's got to provide a defense. Now, in this case, in the duty to defend paragraph, the Article 15c of the reinsurance agreement, it's undisputed that PRM has the obligation to investigate and to the extent that it may be required under the PRM coverage document to defend and to defend that claim to final determination. So at the very beginning when you're analyzing it, at the beginning when you get the second amended complaint and you're looking at your duty to defend, there's 19 paragraphs of covered claims within that covered time period. Munich Re does not dispute the duty to defend. Mr. Duffy, their corporate representative, admitted that. So they have paid you your defense costs? No, they've denied everything. They've not paid us a thing. That's why in this particular case, we sued in four counts. The first count is for breach of contract is to the defense fees and costs. The second count is for the settlement payment of $750,000. I've taken up much too much time. I hope that he answered your question, did he? I just want to say, let me just clarify before you sit down. So the two provisions that you're saying are inconsistent with the district court's interpretation, that there's no follow the fortunes doctrine applicable here, are the indemnification provision that you referred to earlier and then another provision that talks about prompt payment. Is that correct? Yes, ma'am. All right. Thank you. Good morning, your honors. May it please the court. My name is Kathy Segayan. I'm an attorney with Clyde & Co.'s Chicago office representing the FLE Munich ReAmerica. And with me as co-counsel is Taylor Davis. She's with Clyde & Co.'s Atlanta office. Your honor, we believe the district court got it right when it found that the underlying case was not within the scope of the underlying coverage agreement that PRM issued to its member, effective between April 1, 2008 and April 1, 2009. That's the coverage agreement that was reinsured by my client. I believe that counsel here is using follow the fortunes as a red herring in this case, as was found below and as was argued in our briefs. There is no such provision in the Munich reinsurance agreement. And even if there were, the follow the fortunes clause would not apply if there was no good faith or if the underlying claim didn't come within the scope of coverage in the first instance. And I believe from just what I was hearing in the arguments, the court understands that the district court You've heard only one judge say that, so All right. Thank you. A very good judge, by the way. So I guess getting to the What about his question that you at least had a duty to defend? Okay. On the duty to defend argument. So what we have to look at is, and just like you did in the PRM v. Warren Beacon case, You need to look at the four corners of the second amended complaint that was filed in the underlying action by the Chmielewski's against the city of St. Pete's Beach. And in that particular case, the allegations were that they owned two parcels of property, a residential property, a beach property. And it was close to an art center owned by the city. The city renovated that art center. And sometime around 2005, those renovations were finished. And at that time, the city encouraged the public to come out and use the art center to park their parking meters and to walk along a walkway, which was adjacent to the Chmielewski's property to use the beach. There were two beach properties there, one that was owned by the Chmielewski's that was subject to the quiet title action and then a public beach. The allegations in the second amended complaint make allegations about the loss of use and enjoyment of their property. Specifically, there's an allegations of interference with the possessory interest in their property in violation of 42 U.S.C. 1983 by encouraging the public to access and traverse their property. Those actions were happening as early as 2005 and continued. They prompted the Chmielewski's to bring that quiet title action and later prompted them to bring the civil rights action, which is the scope of the underlying case. So we believe that the second amended complaint has allegations that talk about wrongful acts and related wrongful acts that predate the coverage agreement, which incepted on April 1, 2008. And that's the agreement that is reinsured by Munich ReAmerica. In addition, I'd like to talk about potential bad faith in this case. My client was tendered this claim in December of 2013. And at that time when it was tendered, it was tendered under notification that there was a claim made in 2009, which potentially would have been covered under my client's policy. My client sent a coverage letter in January of 2014 and said, look, this particular wrongful acts coverage for this member, the PRM had 50, 60, 70 members. Most of them had this particular coverage on a claims made basis. But there were three or four, including the city of St. Pete's Beach, which had it on an occurrence basis. So Munich Re pointed it out and said, look, this is not claims made coverage for this member. It's occurrence coverage and the occurrence predated us. After that letter, they did not hear from the city or PRM for about 18, 19 months. Between January of 2014 and after the trial in October of 2015, PRM focused all of its efforts for coverage on its prior reinsure. And it did things like advise the prior reinsurer of the status of the case, a loss on a summary judgment motion, settlement discussions. It sought reimbursement for defense costs in excess of $200,000. It kept that reinsurer advised of the trial. And it was only after the trial, about a week or two after the trial, that PRM wrote to my client and said, listen, something happened at the trial and we're now asking for reconsideration under the reinsurance agreement. And that's when my client got involved again, went back, looked at the trial transcripts and decided that nothing had changed. We believe that the district court's review of the case, which looked extensively at the second amended complaint for purposes of duty to defend, was proper. The district court, particularly Judge Percelli, the Megastreet judge, has a very thorough opinion where he not only looked at the second amended complaint, he also looked at the summary judgment motion that was denied, which talked about the possessory interest in property. He looked at the verdict in the case. He looked at the district court judge's post-verdict order in the case, which looked at what exactly was this interference with possessory interest in the property violation. And in all the instances, nothing was tied to a date. Nothing was tied to November of 2008. Everything focused on the fact that this couple, the Chmielewskis, had lived at this home for a long time. And starting in approximately 2005, people started invading their property to get to the beach. They were looking in their windows, leaving trash, listening to loud music. And this interfered with the possessory interest of their property. And that's what this case is about. So we believe that the district court's decision was proper and should be upheld in this case. Any questions? No, thank you. Thank you. Members of the bench, what is – what Munich Re is asking you all to do is to ignore American bankers and ignore the fact that this is a reinsurance contract. And to start now, for the first time since 1999, engaging in de novo coverage reviews of good faith determinations by underlying insurers. That's a very, very slippery slope. The ramifications are outlined in the proliferation of litigation, not only at the reinsurance level, but at the underlying initial first party insurance level. In this particular case, there's no doubt that this is a reinsurance treaty. There's no doubt that it calls for indemnification. American bankers said the starting point is to look at the simple reinsurance agreement itself. What does it require? Had that been done in this case, we wouldn't be here today. The follow the fortunes reason – and my understanding is that a majority of courts have declined to even imply that. It seems to me in this case we don't need to decide whether to imply one because the language of this contract is so clear that it is not a follow the fortunes. You have to prove both payment and coverage. And therefore, that is inconsistent with the follow the fortunes clause. What that language says, Your Honor, is that PRM has to prove that it covered it and it paid for it. That it's covered under the document. It doesn't just say covered. It says covered. Covered here under. Here under. Correct. In one place and another place. Covered by the coverage document. Reinsured hereby. Correct. And that includes public officials E and O. Now, the district court found that there was no follow the fortunes clause and therefore threw out American bankers in its review. This court in American bankers did not say that it has to have a follow the fortunes clause in order to invoke the follow the fortunes doctrine. There is, in fact, the court said that usually they have language in there and this is what it had in American bankers. There is no court in the land that mandates that you have to have magic terminology, some type of holy shibboleth. You're correct about that. In some courts, although not a majority, have implied a follow the fortunes. But here, you're not answering my question. I don't think we have to reach that issue because a follow the fortunes clause would be inconsistent with the precise language of the policy, of the reinsurance policy. The court in American bankers said usually you have to have, usually these reinsurance contracts have it. The North River Insurance v. Cigna case out of the Third Circuit said they often have follow the fortunes clauses. Travelers v. Insurance Company of North America, Third Circuit also says they typically have follow the fortunes clauses. I would submit to you that you do not have to have a follow the fortunes clause in order to invoke the follow the fortunes doctrine. In this case, though, we specifically did. We had language that was tantamount to exactly the same language that the Eighth Circuit had in the employer's reinsurance v. Massachusetts. You haven't pointed me to that language. The language in the Eighth Circuit for employers. No, I'm talking about our contract. It is in paragraph 11C. It's 11C of the Munich PRM contract. It says payment by the reinsurer of its portion of loss and expense paid by or on behalf of PRM will be made by the reinsurer to PRM promptly after proof of payment by PRM and coverage here under is received by the reinsurer. And coverage here under. Yes, sir. Again, though, coverage here under is by PRM. It's coverage by PRM. This is in the reinsurance contract. Yes. Here under would be in the reinsurance contract. But the initial coverage determinations are made by PRM. Sure. Right? Right. American Bankers, Your Honor, stands for the proposition that reinsurers are not permitted to revisit coverage determinations made by PRM. To do that and to reverse and not follow American Bankers in this case would eviscerate the whole purpose and meaning behind the decision in American Bankers. It would completely upset the apple cart. And you would open up the doors to litigation at all levels, not only at the reinsurance level, and there would be no reason for PRM to ever want to settle. We understand your argument, Mr. Roper. Thank you. All right. Thank you very much. All right. Thank you. Our next case.